## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROBERT JEFFERSON, | ) | |
| | ) | |
| **Petitioner,** | ) | |
| vs. | ) | **Case No. 20-cv-595-DWD** |
| | ) | |
| E. WILLIAMS, | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Now before the Court is Petitioner Robert G. Jefferson's *pro se* Petition for Writ of

Habeas Corpus brought pursuant to 28 U.S.C. § 2241 (Doc. 1).

## Background[1]

On August 5, 1998, a jury found Petitioner guilty on 25 counts of a Third

Superseding Indictment, including for the murders of Londwea Brown and five young

children, running a continuing criminal enterprise ("CCE"), drug conspiracy, various

drug charges, and as a felon in possession of a firearm. *See Jefferson v. United States*, Nos.

---

[1]The documents from Petitioner's criminal case records are largely unavailable electronically. However, the Court has reviewed the portions of the record submitted by the parties, in addition to the available records in *United States v. Jefferson*, Case No. 97-276-2-MJD (D. Minn). The Court has further reviewed the Eighth Circuit Court of Appeals' decision affirming Petitioner's convictions and sentence, *see United States v. Jefferson*, 215 F.3d 820, 823 (8th Cir. 2000), and the District Court's orders denying Petitioner's motions for relief under 28 U.S.C. § 2255 and 18 U.S.C. § 3582(c). *See Jefferson v. United States*, Nos. CR 97-276(2), Civ. 01-1821, 2002 U.S. Dist. LEXIS 25370, *2 (D. Minn. Dec. 3, 2002) (order denying Petitioner's 28 U.S.C. § 2255 motion); *United States v. Jefferson*, No. CR 97-276 (2) (MJD), 2021 WL 2143478, at *1 (D. Minn. May 26, 2021), (order denying Petitioner's Motion for Sentence Reduction), reconsideration denied, No. CR 97-276 (2) (MJD), *United States v. Jefferson*, No. CR 97-276 (2) (MJD), 2021 WL 3472650 (D. Minn. Aug. 6, 2021). The Court is entitled to take judicial notice of these court documents. *See Keller v. Walton*, No. 14-CV-594-DRH, 2014 WL 2861547, at *1 (S.D. Ill. June 24, 2014), *aff'd* (July 30, 2015) (district courts may judicially notice public records available on Public Access to Court Electronic Records ("PACER") and other court documents to determine petitioner's criminal and litigation history) (citing *Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) and *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)).

CR 97-276(2), Civ. 01-1821, 2002 U.S. Dist. LEXIS 25370, *2 (D. Minn. Dec. 3, 2002) (order denying Petitioner's 28 U.S.C. § 2255 motion). Petitioner was sentenced to life imprisonment on the CCE and murder counts. *Jefferson*, 2021 WL 2143478, at *1 (order denying Petitioner's Motion for Sentence Reduction). Petitioner was also convicted of one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), for which he was sentenced to 10-years. *Jefferson*, 2021 WL 2143478, at *3. His convictions and sentence were affirmed. *Jefferson*, 215 F.3d at 823.

Here, Petitioner only challenges his conviction under 18 U.S.C. § 922(g)(1) (Doc. 1). Petitioner does not challenge the remaining counts of his conviction. Petitioner invokes *Rehaif v. United States*, __ U.S. __, 139 S. Ct. 2191 (2019), as the basis for his collateral attack, and argues that the Government failed to prove that he knew he belonged to the category of persons (those with a prior felony conviction) who were prohibited from possessing a firearm, at the time he possessed a firearm (Doc. 1). Petitioner argues generally that he is entitled to relief because his charging indictment and corresponding jury instructions did not specify a "status" element (Doc. 1, p. 10). Respondent answered the Petition (Doc. 10), to which Petitioner replied (Doc. 12). Respondent also filed supplemental authority (Doc. 13), to which Petitioner responded (Doc. 14).

## Discussion

Typically, petitions for writ of habeas corpus under 28 U.S.C. § 2241 may not be used to raise claims of legal error in conviction or sentencing; they may only challenge the execution of a sentence. *Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998). Thus,

aside from the direct appeal process, a prisoner who has been convicted in federal court is usually limited to challenging his conviction and sentence by bringing a motion pursuant to 28 U.S.C. § 2255 in the court which sentenced him. *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003). A prisoner may only challenge his federal conviction or sentence under 28 U.S.C. § 2241 in very limited circumstances, such as the "saving clause" of 28 U.S.C. § 2255(e), which authorizes a federal prisoner to file a 28 U.S.C. § 2241 petition where the remedy under § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e); *United States v. Prevatte*, 300 F.3d 792, 798–99 (7th Cir. 2002).

Section 2255 relief is inadequate "when it is so configured as to deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998) (emphasis in original). Therefore, before relief under § 2241 becomes available, Petitioner must demonstrate the inability of a 28 U.S.C. § 2255 motion to cure the alleged defect in their conviction because of a structural problem inherent in § 2255. *See Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015) (Petitioner must show "something more than a lack of success with a section 2255 motion" before the saving clause is satisfied). Following *Davenport* and its progeny, the Seventh Circuit has developed a three-part test for determining whether § 2255 is inadequate or ineffective so to trigger the saving clause:

　　　1.　　The federal prisoner must seek relief based on a decision of statutory interpretation (as opposed to a decision of constitutional

interpretation, which the inmate could raise in a second or successive § 2255 motion);

2.      The statutory rule of law in question must apply retroactively to cases on collateral review *and* could not have been invoked in a first § 2255 motion; and

3.      A failure to afford the prisoner collateral relief would amount to an error "grave enough" to constitute "a miscarriage of justice."

*Worman v. Entzel*, 953 F.3d 1004, 1008 (7th Cir. 2020) (emphasis in original) (citing *Montana v. Cross*, 829 F.3d 775, 783 (7th Cir. 2016) and *Beason v. Marske*, 926 F.3d 932, 935 (7th Cir. 2019)); *see also Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019).

Petitioner asserts a claim based on the 2019 *Rehaif* opinion, in which the Supreme Court held, as a matter of statutory interpretation, that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."  *Rehaif*, 204 L. Ed. 2d 594; *United States v. Williams*, 946 F.3d 968, 970 (7th Cir. 2020) (defendant's conviction for illegal possession of firearm and ammunition was based on his status of being illegally or unlawfully in the United States; reversing/remanding because the Government had not been required to prove at trial that defendant knew he was unlawfully in the country).  The opinion abrogated nationwide precedent in all eleven circuit courts of appeal which had held that knowledge was not an element that the prosecution must prove to obtain a conviction, including in the Eighth Circuit where Petitioner was convicted.  *See, e.g.*, *United States v. Thomas*, 615 F.3d 895, 899 (8th Cir. 2010) (holding that in a § 922(g) prosecution the Government was not required to prove that the defendant knew of his disabling status).

4

Petitioner claims that the Government failed to prove that he knew he belonged to the category of persons (those with a prior felony conviction) who were prohibited from possessing a firearm, at the time he possessed a firearm (Doc. 1).  Respondent concedes that Petitioner's *Rehaif* claim satisfies the first and second prongs of the Seventh Circuit's "saving clause" test – *Rehaif is* a statutory interpretation case, and it sets forth a new substantive rule narrowing the scope of Section 922(g), which applies retroactively (Doc. 10, pp. 19-20).  Further, this new substantive rule was previously unavailable to Petitioner because it would have been futile to raise his claim in his first Section 2255 motion[2] under binding pre-*Rehaif* precedent (*Id.*). However, Respondent asserts that Petitioner cannot meet the third *Davenport* factor – a showing that an error in his conviction amounts to a miscarriage of justice – because he was not convicted of a crime for which he was actually innocent (Doc. 10, p. 21).[3]  On this issue, the Court agrees.

Respondent acknowledges that Petitioner's indictment did not allege that he knew he was a convicted felon at the time he possessed the firearm (Doc. 10, p. 5).  This was consistent with pre-*Rehaif* controlling precedent.  However, the Government avers that it would have been implausible for Petitioner to not know he was a prohibited person because of his prior state court felony conviction, and the term of imprisonment he served

---

[2] Prior to the instant § 2241 Petition, Petitioner challenged his sentence on a direct appeal (Doc. 1).  Petitioner also filed a motion pursuant to 28 U.S.C. § 2255 which was denied on December 3, 2002 (Doc. 1, p. 14). Petitioner has sought to file four successive § 2255 petitions, but these applications have all been denied (Doc. 1, p. 14).

[3] Respondent also raises the argument, in order to preserve it, that an inmate who previously challenged his conviction under 28 U.S.C. § 2255 is barred from using the "saving clause" to raise a later challenge under Section 2241. (Doc. 10). The Court finds it unnecessary to address the merits of this argument because, as Respondent acknowledges, it is contrary to controlling Seventh Circuit precedent (Doc. 10, p. 17).

for that felony conviction.  *See, e.g.*, *Williams*, 946 F.3d 968 (Finding that defendant "cannot plausibly argue that he did not know his conviction had a maximum punishment exceeding a year" where he spent twelve years of his life in prison).

Following the *Rehaif* decision, the Seventh Circuit has clarified that district courts can, and should, consider other evidence in the criminal record to determine whether the evidence establishes the knowledge element set forth in *Rehaif.  See, e.g., United States v. Maez*, 960 F.3d 949 (7th Cir. 2020); *Williams*, 946 F.3d at 973–74; *United States v. Dowthard*, 948 F.3d 814, 818 (7th Cir. 2020); *United States v. Pulliam*, 973 F.3d 775 (7th Cir. 2020).  Post-*Rehaif*, the Government does not have "to prove that the defendant knew he was prohibited from possessing a firearm. Knowledge of the relevant status is enough." *Santiago v. Streeval*, 36 F.4th 700, 707 (7th Cir. 2022) (citing *Maez*, 960 F.3d 949); *United States v. Cook*, 970 F.3d 866, 880 (7th Cir. 2020).  Further, to establish "actual innocence" here, Petitioner "must show that no reasonable juror would find beyond a reasonable doubt that he knew that . . . his prior conviction[] was for a crime that carried a potential sentence of more than one year in prison." *Santiago*, 36 F.4th at 707.

### *State Felony Conviction*

On May 31, 1994, Petitioner pled guilty to a Minnesota felony charge for witness tampering (Doc. 10-1, pp. 4-6, 41) (citing *State of Minnesota v. Robert G. Jefferson*, 62-K2-94-670).  In this case, Petitioner was originally charged with witness tampering and assault, and the charging complaint provided that the maximum punishments for these charges were five years, and seven years, respectively (Doc. 10-1, pp. 4-6).  Petitioner pleaded

guilty to the witness tampering charge on May 31, 1994 (Doc. 10-1, p. 41).  The assault charge was ultimately dismissed.

In a signed statement made before his change of plea hearing, Petitioner confirmed that he understood that pleading to the charge of witness tampering was a felony and carried a maximum sentence of 5 years (Doc. 10-1, p. 23 at ¶ 19.b) ("I have been told by my attorney and I understand: b. That the maximum penalty that the court could impose for this crime (taking into consideration any prior conviction or convictions) is imprisonment for 5 years and/or a fine of $10,000").  At his change of plea hearing, Petitioner also acknowledged that he had read and received a copy of the charging complaint (Doc. 10-1, at pp. 12-13), which had stated the maximum punishment for that charge was in excess of one-year.  These statements alone support an inference that Petitioner was aware that he had been convicted of a crime punishable by more than one-year imprisonment.  *See, e.g.*, *Pulliam, 973 F.3d 775*, at *3-4; *Maez, 960 F.3d at 967*–68 (considering PSR record of prior incarceration, stipulation of felony conviction, and evidence supporting inference of defendant's knowledge of felon status to conclude plain error of omitted *Rehaif* instruction did not warrant reversal of conviction).

Nevertheless, Petitioner argues that he was unaware that he had been convicted of a felony in this case because his sentence was initially suspended.  Indeed, on July 8, 1994, Petitioner's sentence was suspended pending a five-year term of probation (Doc. 10-1, p. 48).  However, this suspension was eventually revoked following two revocation hearings (Doc. 10-1, p. 44).  At his first revocation hearing, held on May 3, 1996, the state court instructed Petitioner that his probation would continue with certain drug treatment

7

conditions, but warned Petitioner that if he were to return, he would be given an 18-month prison term (Doc. 10-1, p. 37).  When asked directly by the court if he understood that he would serve an 18-month prison term if he did not remain "[c]hemically free" on probation, Petitioner responded "Yes, sir." (Doc. 10-1, p. 38).

On October 4, 1996, another felony revocation hearing was held (Doc. 10-1, p. 40). At this hearing, the Court found that Petitioner's sentence should be executed (Doc. 10-1, p. 42).  The Court sentenced Petitioner to 18-months incarceration (Doc. 10-1, p. 44). The Court also calculated that Petitioner would receive custody credit for 88 days (*Id.*). In explaining the sentence, the Court reasoned that Petitioner would serve 12 months in custody, less 88 days, followed by a period of six months supervised release.  (Doc. 10-1, p. 44).  The Court also warned that the period of supervised release "can be taken away from you depending upon your conduct in the institution and your conduct while on supervised release." (Doc. 10-1, p. 44).  Petitioner asked for clarification about only serving twelve months, and the Court answered "You're going to do twelve months less 88 days. So by my calculation you take 88 off 365 you'll be down around 276 or so that your attorney has stated. Good luck." (Doc. 10-1, p. 45).

### *Merits of the Petition*

Petitioner does not dispute that he was sentenced to 18-months of incarceration in his state court case (Doc. 12), however, he argues that he was not on notice of his felony status at the time he possessed the firearm in his federal case because of the suspended sentence (Doc. 12).  The Court is not persuaded that Petitioner was unaware of his state felony conviction because of his suspended sentence.  Instead, Petitioner's statements

8

made prior and during his state plea hearing, in addition to the statements he made during his revocation hearings, indicate that Petitioner understood he was convicted of a crime punishable by more than one-year imprisonment.  Moreover, the Government avers, and Petitioner does not contest, that he served more than 12-months incarceration for this conviction (Doc. 13; Doc. 14).  Thus, Petitioner's argument that he lacked knowledge of his status is implausible considering these statements and because he served more than one year in prison for his state court conviction.  *See e.g.*, *Santiago*, 36 F.4th at 708-09, and cases cited therein.

However, Petitioner also briefly argues that he could not have known about his felony status when he allegedly possessed the firearm in his federal case because he committed the acts leading to this felony charges while his state court case sentence was suspended.  This argument mirrors the rare exception exemplified in *Moore v. United States*, No. 07-CR-137-BBC, 2020 WL 4785432, at *4–5 (W.D. Wis. Aug. 18, 2020) (granting relief under § 2255 by showing that, at the time petitioner possessed the firearm, he had not yet actually been convicted of a felony).  Here, the record before the Court is largely devoid of the necessary details for the Court to determine when the acts underlying Petitioner's federal crimes occurred.  Instead, the Government's briefing largely focuses on the heinous nature of Petitioner's federal convictions without detailing when those crimes occurred.  Further, in reviewing the available criminal court records, some of Petitioner's federal crimes indeed overlap in in time with the state felony proceedings.  *See, e.g.*, *Jefferson*, 215 F.3d at 824 (explaining that Petitioner concocted one of his attempted murder schemes ***after*** he committed the beating underlying his state witness

tampering conviction because the beating was not sufficient punishment for the victim);

*Jefferson*, 2021 WL 2143478, at *1 (the six murders Petitioner was convicted for occurred

on February 12, 1994 and February 28, 1994).  Petitioner did not plead guilty to the witness

tampering charge until May 31, 1994 (Doc. 10-1, p. 41).  Thus, while Petitioner's federal

murder convictions were egregious, the current record does not support a finding that

Petitioner could have been aware of his felony status at the time of all of his federal

crimes, and particularly the murder convictions, because those acts occurred prior to his

state court conviction.

Nevertheless, the evidence does support a finding that some of the other federal

crimes Petitioner was convicted for occurred after his state felony conviction.  The

following excerpt from the District Court's order denying Petitioner's Motion to Reduce

Sentence provides a helpful timeline of Petitioner's numerous crimes as described in the

Third Superseding Indictment:

> As set forth in the Third Superseding Indictment, Count 1 charged "From on or about January 1, 1992, the exact date being unknown, to the present [the Third Superseding Indictment was filed on May 12, 1998], in the State and District of Minnesota and elsewhere, the defendants Robert George Jefferson and Yolanda Dean each aiding and abetting the other, knowingly and intentionally engaged in a continuing criminal enterprise ..." (Doc. No. 676.) The conspiracy count covered the same time period. (Id.)
>
> Defendant's date of birth is April 28, 1975. Thus, at the beginning of the charged conspiracy Defendant was 16 years old. However, the Third Superseding Indictment alleges that Defendant engaged in overt acts and committed individual counts of drug trafficking dated August 6, 1996 and later[1]. In August 1996, Defendant was 21 years old. . . .
>
> As to the murder counts, Defendant was not a juvenile when the murders were committed. Londwea Brown was killed on February 12, 1994. The

Coppage children were killed on February 28, 1994. On those dates, Defendant was almost 19 years old.

*Jefferson*, 2021 WL 2143478, at *1.

Therefore, the federal indictment charged Petitioner with committing overt acts in furtherance of his conspiracy and other federal crimes from January 1, 1992, until May 12, 1998.  *Id.* Petitioner pled guilty to the witness tampering charge on May 31, 1994 (Doc. 10-1, p. 41).  His suspended sentence was revoked on October 4, 1996 (Doc. 10-1, p. 40), and Petitioner was released from service of his state sentence on July 7, 1997 (Doc. 10, p. 7).[4]  Thus, the evidence supports a finding that Petitioner was aware of his felony status when he committed the crimes dated after May 31, 1994, and certainly when he committed those crimes dated after October 4, 1996.

According to the limited record before the Court, one crime involving a firearm occurred after Petitioner was convicted of his state felony offense.  Specifically, Petitioner was convicted of directing a drive-by shooting which occurred on February 22, 1995  *See Jefferson v. United States*, Nos. CR 97-276(2), Civ. 01-1821, 2002 U.S. Dist. LEXIS 25370, *2 (D. Minn. Dec. 3, 2002) (order denying Petitioner's 28 U.S.C. § 2255 motion; describing that the evidence at trial demonstrated that Petitioner instructed two gang members to shoot a victim of a drive-by shooting, which made Petitioner liable for the shooting as well;  the drive-by shooting occurred in 1995); *see also Jefferson v. United States*, No. 97-276(4), 2002 U.S. Dist. LEXIS 25382, at *13 (D. Minn. Dec. 2, 2002) (denying co-

---

[4] The Government supplied this date based on statements made in Petitioner's federal presentence investigation report ("PSR").  A copy of Petitioner's PSR was not provided to the Court for review. However, Petitioner does not contest this date.

defendant Robert James Jefferson a/k/a Duddy's § 2255 petition, and referencing the date for the drive-by shooting, which occurred on February 22, 1995). In sum, the evidence shows that Petitioner was aware of his felony status at the time he committed some of his federal crimes, including instructing his co-conspirators to commit the February 1995 drive-by shooting for which he was also convicted. Accordingly, Petitioner cannot show a miscarriage of justice here.

Petitioner also briefly argues that he never possessed any firearm (Doc. 14). This argument is underdeveloped. Nevertheless, this argument is unsupported by the record which shows that Petitioner was the leader of the gang directing his co-conspirators actions and making Petitioner liable for their actions as well. *See Jefferson v. United States*, Nos. CR 97-276(2), Civ. 01-1821, 2002 U.S. Dist. LEXIS 25370, *12 ("[T]he evidence at trial overwhelmingly established that Petitioner was the leader of the gang"). Petitioner raised a similar challenge in his first motion brought pursuant to 28 U.S.C. § 2255, in which he argued that the element of possession was never established. *See Jefferson v. United States*, Nos. CR 97-276(2), Civ. 01-1821, 2002 U.S. Dist. LEXIS 25370, *25-26. The District Court, however, found that the claim was without merit because the Government's theory at trial was of constructive possession of a firearm. *Id.*

Petitioner does not otherwise contest the substantive facts of his convictions, and he has not presented any evidence to show that he is actually innocent. He therefore cannot demonstrate that the omission of the *Rehaif* knowledge element from his indictment or proceedings resulted in his being convicted of a nonexistence offense, or of a crime of which he was innocent. Accordingly, there was no miscarriage of justice

12

in this case, and Petitioner is not entitled to habeas relief under Section 2241 based on the *Rehaif* decision.

### *Concurrent-Sentence Doctrine*

Moreover, even if Petitioner could show a miscarriage of justice here, any error related to Petitioner's felon in possession charge had no real effect on his sentence such that a court in this Circuit could remedy it.  *See Vanover v. Werlich*, No. 19-1121, 2021 WL 2792955, at *1 (7th Cir. Mar. 12, 2021) (citing *Ryan v. United States*, 688 F.3d 845, 859 (7th Cir. 2012) (applying concurrent-sentence doctrine where conviction has no cumulative effect)).  Specifically, reducing Petitioner's 10-year sentence on the felon in possession charge would not change the overall length of his incarceration where he is serving a life sentence on multiple convictions and sentences which were found to be valid, and which remain unchallenged by Petitioner.  As the Seventh Circuit recently reasoned, "[a] habeas court entertaining a saving-clause petition can order a prisoner's release when that outcome is appropriate, but it cannot directly amend a sentencing judgment from outside the circuit."  *Vanover*, 2021 WL 2792955, at *1.  Thus, alternative grounds exist to deny the Petition here based on the concurrent-sentence doctrine.

The concurrent-sentence doctrine is a discretionary doctrine that allows courts to "pretermit decision about convictions producing concurrent sentences, when the extra convictions do not have cumulative effects." *Ruiz v. United States*, 990 F.3d 1025, 1033 (7th Cir. 2021), *cert. denied*, 212 L. Ed. 2d 406 (Mar. 28, 2022) (citing *Ryan*, 688 F.3d 845).  "The idea behind the doctrine is that review is unnecessary when the challenged sentence does not affect the total aggregate punishment." *United States v. Harris*, No. 21-1405, 2022 WL

7880843, at *11 (7th Cir. Oct. 14, 2022).  This discretionary doctrine applies primarily in habeas cases, although, the Seventh Circuit has also applied it in some limited circumstances on direct appeal.  *Harris*, 2022 WL 7880843, at *11; *Ryan*, 688 F.3d at 849 ("As a practical matter, the concurrent-sentence doctrine was abrogated for direct appeal when Congress imposed a special assessment . . . for each separate felony conviction.  A collateral attack under § 2241, § 2254, or § 2255 contests only custody, however, and not fines or special assessments.") (internal citations omitted).

The concurrent-sentence doctrine applies where there is (1) an equal of longer sentence on an unchallenged or affirmed conviction and (2) no adverse collateral consequences would come to the prisoner by declining to review the challenged conviction.  *Ruiz*, 990 F.3d at 1033 (citing *Hill v. Werlinger*, 695 F.3d 644, 649 n.1 (7th Cir. 2012)).  Applying the concurrent sentencing doctrine here is warranted, for the same reasons articulated by the District Court in its Order denying Petitioner's § 2255 challenge to his CCE conviction.  *See Jefferson*, 2021 WL 2143478, at *3.  There, the Minnesota District Court found that "[e]ven if the Court were to sentence Defendant to a lesser sentence on the CCE count under the First Step Act, it would not reduce his life sentence on the murder counts –which involved the deaths of five, innocent young children, the youngest of which was 2 years of age and the oldest 11 years of age." *Id.*  That reasoning also applies here.  The record clearly shows that Petitioner's convictions and sentences on his murder counts remain valid and unchallenged by this Petition, and there is no indication in the record that the sentencing court would have imposed a different sentence on Petitioner's murder courts.  Thus, even if Petitioner could show an error related to his felon in

possession charge, he would be entitled to no tangible relief from this Court. *See Vanover*, 2021 WL 2792955, at *1 ("[a] habeas court entertaining a saving-clause petition can order a prisoner's release when that outcome is appropriate, but it cannot directly amend a sentencing judgment from outside the circuit.").

### Disposition

For these reasons, Petitioner Robert G. Jefferson's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) is **DENIED**, and this action is **DISMISSED with prejudice**.  It is not necessary for Petitioner to obtain a certificate of appealability from this disposition of his § 2241 Petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000); *see also* 28 U.S.C. § 2253.

The Clerk is **DIRECTED** to enter judgment accordingly and close this case.

**SO ORDERED.**

Dated:  November 2, 2022

_____
DAVID W. DUGAN
United States District Judge

15